IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 11-cv-02116-WJM-KMT

AARON JOEL PULLER,

     Plaintiff,

v.

PAUL C. BACA, in his individual capacity, and in his official capacity as Detective,

     Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Aaron Joel Puller ("Plaintiff") brings this case against Defendant Detective Paul C. Baca ("Defendant") in his individual and official capacities claiming a violation of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 ("Section 1983") (Compl. (ECF No. 2.))  This matter is before the Court on Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 47.)  For the reasons set forth below, Defendant's Motion is granted.

## I.  BACKGROUND

Defendant is, and was during all times relevant to this litigation, a Detective employed by the Denver Police Department.  (Compl. ¶ 10.)  Plaintiff is an African-American male.  (*Id.* ¶ 68.)  Plaintiff's claim arises out of a robbery that occurred in Denver, Colorado on August 23, 2009.  (Compl. ¶ 11; Aff. & Appl. for Arrest Warrant ("Aff.") (ECF No. 47 Ex. A-1).)  The facts, viewed in the light most favorable to the Plaintiff, are as follows.

In the early morning hours of August 23, 2009, Allen Andes was leaving a bar in Downtown Denver when he was confronted by a group of African-American individuals, who then attacked him and robbed him of his wallet. (Aff. at 3.) Mr. Andes reported the incident to the Denver Police Department, where Defendant conducted an interview with him. (*Id.*) Mr. Andes reported that while he was being attacked, he could hear a female voice yelling, "Get that white boy." (*Id.* at 3.) In the course of investigating the incident, Defendant interviewed Keisha Parker on September 28, 2009, and Landae Woods-King on October 13, 2009. (*Id.* at 4, 6.) Ms. Parker indicated that she had been present prior to the attack on Mr. Andes and had seen parts of it. (*Id.* at 5.) Mr. Woods-King indicated that he had been part of the group that approached and attacked Mr. Andes, and Mr. Woods-King had participated in "going through the victim's pockets." (*Id.* at 6-7.)

On November 19, 2009, Defendant executed a sworn Affidavit and Application for Arrest Warrant detailing the evidence against Plaintiff and requesting the issuance of a warrant to arrest Plaintiff for Aggravated Robbery and a Bias-Motivated Crime. (*Id.* at 7.) Defendant's Affidavit included information about a pattern of crimes perpetrated by gang-affiliated African-Americans against white victims in the Downtown area of Denver. (*Id.* at 2.) The Affidavit included information garnered from interviews with Mr. Andes, Ms. Parker, Mr. Woods-King, and others, regarding the details of the incident on August 23, 2009. (*Id.*) With respect to Plaintiff, the Affidavit stated that Mr. Woods-King identified Plaintiff as "in the company of" individuals who attacked and robbed Mr. Andes. (*id.* at 6.) The Affidavit stated that as the group approached Mr. Andes, one

2

member of the group began "talking stuff to the dude" and "then just took off on him." (*Id.*)  The Affidavit then indicated that Mr. Woods-King had stated that Plaintiff was one of eight individuals who "all took part in the initial attack on the victim."  (*Id.*)  Apart from these statements, no other evidence against Plaintiff regarding the attack and robbery was included in the Affidavit.  (*See id.*)  As a result of Defendant's sworn Affidavit, an arrest warrant was issued for Plaintiff.  (Compl. ¶ 11.)

Plaintiff was arrested based upon the warrant, and spent 16 days in jail.  (*Id.* ¶¶ 18-19.)  After charges were brought against Plaintiff for his alleged participation in the August 23, 2009 incident, Plaintiff's counsel in the criminal case reviewed recordings of the interviews with Ms. Parker and Mr. Woods-King, and requested a hearing in Denver County District Court, alleging that Defendant's Affidavit included false statements.  (*Id.* ¶¶ 18-21.)  At the hearing, the Denver County District Court found that Defendant's Affidavit had excluded exculpatory information and included false information.  (*Id.* ¶¶ 22-23; *see* ECF No. 47 Ex. B at 5.)  Specifically, the Denver County District Court found that Ms. Parker stated in her interview with Defendant that Plaintiff was not involved in the incident, and that Mr. Woods-King had stated that he did not know Plaintiff, and did not identify Plaintiff as one of the individuals who approached or attacked the victim. (Compl. ¶¶ 22-23; ECF No. 47 Ex. B at 2-3.)  As a result of these falsifications and omissions, the Denver County District Court found that no other evidence existed to support a finding of probable cause to arrest Plaintiff for involvement in the attack on Mr. Andes, and dismissed the criminal charges against Plaintiff.  (Compl. ¶¶ 22-23; ECF No. 47 Ex. B at 4-5.)

Plaintiff initially filed this lawsuit in Denver County District Court against the present Defendant and former Defendant, the City and County of Denver,[1] under Section 1983.  (ECF No. 1 at 1.)  It was removed to this Court on the basis that it invokes a federal claim.  (*Id.* at 2.)  Plaintiff's Complaint alleges five claims: (1) a violation of the Fourth Amendment based on Plaintiff's arrest without probable cause; (2) a violation of the Equal Protection Clause of the Fourteenth Amendment based on a racially-motivated arrest and prosecution; (3) a violation of the Fourteenth Amendment for the manufacture of inculpatory evidence; (4) a violation of the Fourth and Fourteenth Amendments for malicious prosecution; and (5) a violation of substantive due process under the Fourteenth Amendment.  (Compl. at 11-18.)  Defendant filed the instant Motion (ECF No. 47), and Plaintiff filed a Response (ECF No. 65.)  Defendant then filed a Reply.  (ECF No. 72.)

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the

---

[1] Plaintiff voluntarily dismissed the City and County of Denver on October 11, 2012. (ECF Nos. 62, 64.)  As a result, a separate Motion for Summary Judgment (ECF No. 48) filed by the City and County of Denver was denied as moot.  (ECF No. 77.)

nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). In analyzing

a motion for summary judgment, a court must view the evidence and all reasonable

inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-*

*Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must

resolve factual ambiguities against the moving party, thus favoring the right to a trial.

*See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. ANALYSIS

Defendant's Motion argues that Defendant is entitled to qualified immunity on all

five of Plaintiff's claims because, contrary to the findings of the Denver County District

Court, there was sufficient evidence to establish probable cause for Plaintiff's arrest.

(ECF No. 47 at 2.)

"The doctrine of qualified immunity protects government officials from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). To resolve a claim of

qualified immunity, a court must consider two elements: (1) whether a constitutional

violation occurred, and (2) whether the violated right was "clearly established" at the

time of the violation. *Id.* at 232. "Qualified immunity is applicable unless the plaintiff

can satisfy both prongs of the inquiry." *Herrera v. City of Albuquerque*, 589 F.3d 1064,

1070 (10th Cir. 2009).

The first prong of the qualified immunity analysis requires an evaluation of the plaintiff's allegations of constitutional violations.  Here, Plaintiff alleges that Defendant violated his Fourth and Fourteenth Amendment rights by arresting him without probable cause, with racially biased intent; manufacturing inculpatory evidence to support that arrest; maliciously prosecuting him; and imprisoning him pursuant to wrongful legal process in violation of his right to substantive due process.  (Compl. at 11-18.)  The Court will review each alleged constitutional violation below.

## A.    False Arrest

When an "arrest [without probable cause] is the subject of a [Section] 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff" in light of the information the officer possessed.  *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Id.* (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)); *Wong Sun v. United States*, 371 U.S. 471, 481 n. 9 (1963).

"Arrest warrant affiants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in the affidavit, or knowingly or recklessly omit from an arrest affidavit information which, if included,

would have vitiated probable cause." *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)) (internal citations omitted).  In such a case, "the existence of probable cause is determined by setting aside the false information and . . . examining the affidavit as if the omitted information had been included[,] and inquiring if the affidavit would still have given rise to probable cause for the warrant." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (quoting *Stewart v. Donges*, 915 F.2d 572, 582 n. 13 (10th Cir. 1990)).  If, after eliminating the false information and adding the omitted information, "the affidavit filed in support of the arrest warrant include[s] sufficient facts to demonstrate a substantial probability that plaintiff committed the crime," the affiant's errors are harmless and dismissal of the claim is appropriate.  *Id.*

In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court.  *Hunter*, 502 U.S. at 228 (reversing a holding that the probable cause determination in the qualified immunity context was a question for the trier of fact, because "it routinely places the question of immunity in the hands of the jury.  Immunity ordinarily should be decided by the court long before trial"). Therefore, to prevail on summary judgment, Plaintiff must establish that, given the facts at hand, no reasonably prudent officer would have found he had probable cause to believe that Plaintiff had committed a crime.[2]

---

[2] Because the instant case involves the validity of Plaintiff's arrest pursuant to his claim under Section 1983, the burden rests on Plaintiff to demonstrate that the evidence at issue was insufficient to establish probable cause or "did not constitute reasonably trustworthy information." *Romero*, 45 F.3d at 1480 n.1 (contrasting a Section 1983 civil case with "a criminal case, [where] the burden rests on the government to establish probable cause in support of a[n] arrest").

In the instant case, the evidence regarding Plaintiff's alleged participation in the crime is limited to the information garnered from the interviews with Ms. Parker and Mr. Woods-King.  When Ms. Parker was asked, "Did you see [Mr. Puller] involved in either one of those fights?", she replied, "No, no; his grandma would kill him."  (Parker Interview (ECF No. 47 Ex. A-2) at 1:31:45.)  However, Ms. Parker admitted that she did not see the entire attack, stating that once she saw it begin, she "just took off running." (*Id.* at 1:00:27.)  When Mr. Woods-King was shown a picture of Plaintiff, he stated, "I don't know that dude."  (Woods-King Interview Part 1 (ECF No. 47 Ex. A-2) at 45:36.) However, Mr. Woods-King later included Plaintiff's picture when identifying the group of individuals who were present prior to the attack, and again included Plaintiff's picture when identifying those individuals who "approached" the victim.  (Woods-King Interview Part 2 (ECF No. 47 Ex. A-2) at 2:15, 7:22.)  Mr. Woods-King did not identify Plaintiff when asked who participated in physically assaulting Mr. Andes, or in going through his pockets.  (*Id.* at 7:50.)

Notably, this evidence differs from that in the Denver County District Court findings, as those findings did not include Mr. Woods-King's identification of Plaintiff as one of those present at the incident or involved in the approach to the victim.  (ECF No. 47 Ex. B at 3-4.)  Here, Plaintiff admits that Mr. Woods-King identified him as one of several individuals "walking" and "approaching" Mr. Andes.  (ECF No. 65 at 5.)

Further, this evidence differs from that in Defendant's Affidavit.  (*See* Aff. at 4-6.) Defendant's Affidavit did not include Ms. Parker's statement that she did not see Plaintiff involved in the "fight[ ]."  (*Id.*)  Defendant's Affidavit did include Plaintiff as a

8

member of the group "in the company of" Mr. Woods-King prior to the attack; however, it also included the erroneous statement that "Mr. Woods-King stated that . . . Mr. Puller [and others] all took part in the initial attack on the victim."  (Aff. at 6.)  Because Mr. Woods-King did not identify Plaintiff when he described who took part in physically attacking the victim or in going through his pockets, the statement that Mr. Woods-King "stated" that Plaintiff "took part in the initial attack" was false.  (*See* Woods-King Interview Part 2 at 7:50.)

While the parties do not dispute the above facts, they strenuously dispute whether the evidence constitutes probable cause.  (*See* ECF Nos. 47, 65.)  Because the Affidavit included false information, and omitted material information, the false statement must be stricken from the Affidavit and the omitted information included in order to evaluate the existence of probable cause.  *Wolford*, 78 F.3d at 489. Accordingly, the Court must evaluate the alleged criminal violations listed in the Affidavit to determine whether the evidence supports a finding of a "substantial probability" that Plaintiff committed the stated crimes.  *Id.*  In this analysis, the Court need not determine that it is substantially probable that Plaintiff committed these crimes, only that a reasonable officer given these facts could find such a substantial probability.  *See Hunter*, 502 U.S. at 227 ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.") (quoting *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)).

The Affidavit requests an arrest warrant for Aggravated Robbery and for a Bias-Motivated Crime.  (Aff. at 7.)  Under Colorado law, Aggravated Robbery includes a

robbery—"knowingly tak[ing] anything of value from the person or presence of another by the use of force, threats, or intimidation"—as well as the use of a real or feigned deadly weapon, or "knowingly wound[ing] or strik[ing] the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly put[ting] the person robbed or any other person in reasonable fear of death or bodily injury."  Colo. Rev. Stat. §§ 18-4-301, 18-4-302.  A Bias-Motivated Crime requires the "intent to intimidate or harass another person because of that person's actual or perceived race" or other protected characteristic, and includes the acts of knowingly causing injury to a person or property, or "[b]y words or conduct, knowingly plac[ing] another person in fear of imminent lawless action directed at that person or that person's property and such words or conduct are likely to produce bodily injury to that person or damage to that person's property."  Colo. Rev. Stat. § 18-9-121.

After removing the false statement and including the omitted evidence in the Affidavit, the Court finds no probable cause for the crime of Aggravated Robbery.  The evidence shows that Plaintiff was present prior to an aggravated robbery, and was in a position to observe the robbery as a member of the group.  (*See* Woods-King Interview Part 2 at 7:22.)  None of the evidence presented supports a reasonable finding that Plaintiff took anything of value from the victim, let alone that he "wound[ed]", "str[uck]", or used any deadly weapon against the victim.  *See* Colo. Rev. Stat. § 18-4-302.

However, the Court finds that a reasonably prudent police officer faced with this evidence could find a substantial probability that Plaintiff committed a Bias-Motivated Crime.  Given the history of similar crimes in the area that exhibited the requisite biased intent, and the evidence that a member of the group Plaintiff was in shouted "Get that

10

white boy" during the attack, a reasonable person could find a substantial probability that the group's actions were performed with racially biased intent.  (*See* Aff. at 2-3.) Although no evidence exists to suggest that Plaintiff himself caused injury to the victim or his property, and Ms. Parker stated that she did not see Plaintiff involved in the "fight[ ]", the evidence shows that Plaintiff was a member of the group that "approached" the victim.  (Parker Interview at 1:31:45; Woods-King Interview Part 2 at 7:22.)  A reasonable person could find that Plaintiff's presence with the group establishes a substantial probability that he "knowingly place[d] another person in fear of imminent lawless action directed at that person or that person's property" that was "likely to produce bodily injury to that person or damage to that person's property." Colo. Rev. Stat. § 18-9-121(2)(b).  A reasonably prudent person could believe that Plaintiff's role—a member of a group of some ten people approaching the lone victim, one of whom then began verbally confronting the victim, and then several of whom physically assaulted and robbed him—was a role of intimidation, with race-based intent, that presaged and facilitated the subsequent attack and robbery.  Therefore, the Court finds that it was reasonable for Defendant to believe that probable cause existed for Plaintiff's arrest.

This finding by no means equates to a conclusion that Plaintiff was guilty of such a crime, or that an arrest warrant should have been issued on the evidence at hand; nor does the Court ignore the fact that the inclusion of false information in a warrant affidavit represents a serious risk of miscarriage of justice.  Were the Court deciding this issue in the context of a probable cause and qualified immunity jurisprudence less onerous in its legal impediments to plaintiffs like Mr. Puller, this claim would be allowed

11

to proceed to trial.  However, the Court is constrained by controlling precedent from reviewing courts, which requires a finding that, although a falsehood in a police officer's sworn statement is certainly not harmless from the perspective of the integrity of the legal system, it is nevertheless harmless error for the purposes of establishing a constitutional violation if such falsehood does not completely vitiate probable cause. *See Wolford*, 78 F.3d at 489.

Because, as a matter of law, the Court finds that sufficient evidence existed to constitute probable cause for Plaintiff's arrest, Plaintiff has failed to establish a constitutional violation on his Fourth Amendment false arrest claim.

**B.      Other Claims**

Plaintiff claims that Defendant violated his Fourth and Fourteenth Amendment rights by manufacturing inculpatory evidence and thereby subjecting him to malicious prosecution.[3] (Compl. at 13-15.)  To succeed on a malicious prosecution claim, Plaintiff must establish that (1) Defendant caused his confinement or prosecution; (2) the original action terminated in Plaintiff's favor; (3) there was no probable cause for the original arrest; (4) Defendant acted with malice; and (5) Plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).  The Court's finding of probable cause prevents Plaintiff from successfully stating a claim for malicious prosecution and manufacture of inculpatory evidence, given that "no probable cause" is a required element in such a claim.  *See id.*  Therefore, Plaintiff has failed to establish a

---

[3] Although Plaintiff's claims for malicious prosecution and manufacture of inculpatory evidence are not identical, Plaintiff concedes that the analysis is the same.  (ECF No. 65 at 18 n. 2.)

constitutional violation on these claims.

Plaintiff's Equal Protection claim, too, must fail.  To establish a violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff must first show that Defendant had discriminatory intent.  *See Washington v. Davis*, 426 U.S. 229, 241 (1976).  Plaintiff's allegation of discriminatory intent rests on an inference to be drawn from the lack of evidence constituting probable cause for Plaintiff's arrest; Plaintiff has produced no other evidence of discriminatory intent.  (*See* ECF No. 65 at 17-18.)  Therefore, because of the Court's finding of probable cause, Plaintiff can not state a claim for an Equal Protection violation.

Finally, Plaintiff's substantive due process claim also relies upon the lack of probable cause, and as a consequence also must fail.  (*See id.* at 20-21.)  The Tenth Circuit has held that for "a plaintiff who claims that the government has unconstitutionally imprisoned him[,] . . . [t]he initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause."  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004)).  Because the Court has found that Plaintiff has failed to establish that his initial arrest implicated a violation of law of constitutional dimensions, Plaintiff's subsequent imprisonment did not constitute wrongful legal process.  *Id.* at 1082.  Therefore, Plaintiff has also failed to establish a violation of substantive due process.

Since Plaintiff has failed to establish a constitutional violation on the first prong of the qualified immunity analysis, the Court need not proceed to the second prong, as

Plaintiff must satisfy both to defeat qualified immunity.  *See Herrera*, 589 F.3d at 1070.

Accordingly, the Court finds that Defendant is entitled to qualified immunity, and grants

Defendant's Motion.

## IV.  CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS as follows:

1.      Defendant's Motion for Summary Judgment (ECF No. 47) is GRANTED; and

2.      The Clerk shall enter judgment for Defendant.  The parties shall bear their own

attorney's fees and costs.

Dated this 20th day of March, 2013.

BY THE COURT:

_____

William J. Martinez
United States District Judge